HURD, District Judge,
concurring in part, dissenting in part.
I respectfully dissent from the vacatur and remand for a factual determination of the intent of the parties at the time of the settlement between ATI and Warex, Wa-rex’s understanding of HQP’s remaining obligations, and the value of leases and subleases transferred by HQP to Warex pursuant to the settlement order. However, I join the affirmance of the Bankruptcy Court’s order dismissing Mid-Valley’s claim of entitlement to recover the value of the set-off under the sublease.
In addition to affirming the Bankruptcy Court’s order dismissing Mid-Valley’s claim, I would affirm its decision dismissing Warex’s claim regarding the Notes. The Bankruptcy Court found that the settlement agreement satisfied all obligations *117 (both of ATI and HQP) owed under the Notes, therefore, there was no remaining claim by Warex against HQP.
Sufficient evidence exists in the record from which the Bankruptcy Court could find that the parties’ intent in entering into the settlement agreement was that the transfer of the properties by ATI and the subleases by HQP would fully satisfy their indebtedness to Warex. Therefore, the Bankruptcy Court’s finding in this regard was not clearly erroneous.
In 1993, ATI and HQP signed the Notes evidencing their indebtedness, as co-obli-gors, to Warex in the amount of $390,000. At the time ATI filed for bankruptcy protection in 1997, the principal amount owed on the Notes was approximately $250,000, along with interest of about $16,000, for a total indebtedness of $266,216.65. Warex, ATI, and HQP were heavily involved in settlement negotiations, as was the Bankruptcy Court. ATI wished to avoid foreclosure of its two properties valued at $250,000, while Warex wished to recover the maximum possible amount owed to it by a debtor-in-bankruptcy. Although at that time HQP was not in bankruptcy, it was a co-obligor on ATI’s indebtedness to Warex. In addition, HQP had leasehold interests in the properties that were to be transferred, with which to bargain, and Warex did not want to take possession of the property subject to those leaseholds. Finally, although the Bankruptcy Court did not value the leasehold interests, it did approve the settlement agreement. At bare bones the settlement agreement was as follows: property valued at $250,000 along with a leasehold interest in the property is transferred to the creditor in exchange for extinguishment of a debt in the aggregate amount of $266,216.65.
There is no doubt, as the majority notes, that “a co-obligor’s liability for a note may remain even after another obligor extinguishes its duties on the debt.” Supra at [9] (emphasis added); N.Y. Gen. Oblig. L. § 15-105. However, the issue in this case is whether or not the liability of both obli-gors was fully satisfied by the settlement. Upon a review of all the facts, this issue was resolved in the affirmative by both lower courts.
The Bankruptcy Court found that “the Settlement will fully resolve and settle all claims between the Debtor and Warex relating to or in connection with the properties.” The debtor, ATI, was obligated to Warex in the aggregate amount of $266,216.65. The settlement fully resolved ATI’s obligation in the amount of $266,216.65. Thus, if the full amount of the obligation was satisfied as to ATI, it must also have been satisfied as to the co-obligor HQP. These facts fully support the Bankruptcy Court’s later conclusion that the “release as to ATI is complete and unequivocal and a total release and discharge of the claim against ATI. That release alone would release the co-obligor under fundamental principles of law if it weren’t clear, to me at least, that the document was intended and written in such a manner as to release both ATI and Halstead Quinn of liability.”
As the District Court noted, “if you release and discharge the entire underlying debt, there is no more debt to pay.” Similarly, if the underlying debt is discharged, interest no longer accrues. Thus, the argument that there was a difference in the debt of ATI and HQP due to interest accrued to HQP is fallacious. Again, as the District Court noted, “It was one debt for which the two were jointly and severally liable. It wasn’t two separate debts, it was one debt. And this debt was released.”
The rider to the contract of sale provides for surrender of the lease and sublease by HQP “for, and in consideration of, *118 the release from liability to Warex in proportion to its interest therein.” The majority relies upon the language “in proportion to its interest therein” to find that the settlement documents do not unambiguously indicate that the debt under the Notes was fully extinguished by the transfer of the ATI properties and surrender of the HQP subleases. However, given the finding of the Bankruptcy Court that all claims between ATI and Warex were resolved by the settlement (which is undis-putedly correct), this “in proportion to” language merely indicates that while the properties were valued at $250,000 and the debt owed was about $260,000, the remaining proportion of the debt was satisfied with HQP’s surrender of the leases. As the Bankruptcy Court stated, in rejecting Warex’s argument that the “in proportion to language” indicated that the debt was not entirely extinguished by the settlement:
One has to engage in a forensic gymnastic that I’m not capable of to read that language as somehow releasing Warex only to some certain extent despite the language in the purchase price, that is to say Schedule C, which I’ve already read, which indicates that the conveyance of the properties is going to in essence retire the amount owing, which is recited here as 266,000 odd dollars, owed under the three promissory notes that are the source of the obligation of both [ATI] and [HQP], and the further recitation in the Schedule C of a release to the seller and Halstead Quinn.
Tr. of Chapter 11 Hearing (No. 99-20821); Record at 20-21 (emphasis added). As the Bankruptcy Court noted, Schedule C states that the seller [ATI] and HQP are released from their obligations to Warex under the promissory notes to the extent of the purchase price, identified as $266,216.65 in the previous paragraph. This language clearly indicates that the full obligations under the promissory notes, which was $266,216.65 at that time, were satisfied by the settlement.
Identification of ATI as the “seller” does not undermine the Bankruptcy Court’s findings and conclusions. Rather, it is merely acknowledgment that the properties being transferred were owned by ATI (and not HQP).
Neither does language specifically providing for a release of any deficiency claim Warex might have against ATI, while not making any such provision with regard to HQP, since it was the claims against the bankruptcy estate of ATI that were mainly at issue. Further, the provision of a “credit” to ATI in the amount of $250,000 is explainable by the fact that $250,000 was the amount of Warex’s secured claim against the ATI bankruptcy estate, rather than a suggestion that there was no full release or credit to HQP. Reading the terms of the settlement as a whole, it is clear that, while HQP was essential to reaching the agreement, the highest order of priority was preservation of the bankruptcy estate. The out-of-context provisions cited by the majority to indicate that the settlement agreement was not intended to fully satisfy the obligations evidenced by the Notes as against HQP, are, rather, merely attempts to protect the bankruptcy estate and establish that the settlement was in the best interests of the estate.
As the majority concedes, the settlement agreement fully extinguished ATI’s indebtedness to Warex under the notes. ATI was obligated for the full amount of the indebtedness. It follows, then, that once the indebtedness was extinguished, Warex had no claim against the co-obligor HQP. The Bankruptcy Court’s finding to this effect is well supported by the evidence in the record.
*119 Finally, neither lower court found that Warex waived its rights against HQP by failing to expressly reserve rights against HQP when it settled with ATI. Rather, the lower courts found that the settlement fully satisfied the obligation of ATI and hence the obligation of HQP, since the obligations were one and the same. Thus, I would find no error in this regard, and no necessity for determining Warex’s knowledge of any agreement between HQP and ATI. Therefore, I respectfully dissent, in part.